**International Pipe and Ceramics Corporation
v. Department of Labor and Industry**

*Sidney E. Handler*, for appellant.

*Morley W. Baker*, for Department of Labor and Industry.

SHELLEY, J., August 30, 1965.—This case comes before the court on an appeal from a determination by the Department of Labor and Industry of the Commonwealth of Pennsylvania (hereinafter referred to as "department") of the contribution rate of International Pipe and Ceramics Corporation, a corporation with its principal office located in East Orange, N. J. (hereinafter referred to as "Interpace"), applicable to the calendar year 1964, under the provisions of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS §753, et seq.

The pertinent facts involved have been stipulated between the parties and are set forth in the following discussion.

Interpace has been an employer in Pennsylvania since 1914 and has been covered by the Pennsylvania Unemployment Compensation Law since its enactment. Two wholly-owned subsidiaries of Interpace, namely the Concrete Pipe Company of Ohio, Inc. (hereinafter referred to as "Concrete Pipe") and United Mastics Corporation were merged with the parent company. All three corporations had been employers subject to

the contribution provisions of the Pennsylvania Unemployment Compensation Law. The two subsidiaries ceased to do business in Pennsylvania as of July 26, 1963. By reason of the merger of the two wholly-owned subsidiaries, a redetermination for the year 1964 was made by the department of the contribution rate of Interpace pursuant to the Unemployment Compensation Law, and the rate was raised from 2.3 percent to 4 percent.

Interpace filed all the necessary documents required by the department in connection with these mergers; said documents requested the transfer of the employer experience record and reserve account balance of the predecessors with respect to the business transferred. The department approved the applications for transfer of experience records and reserve account balances of the companies acquired and notified Interpace on December 13, 1963.

For the year 1964, Interpace, by reason of its experience record, would have paid a contribution rate to the Unemployment Compensation Fund of 2.3 percent of its taxable payroll. The maximum rate for an employer's contribution is 4 percent. However, the acquisition of Concrete Pipe, which had a cumulative debit of $51,073 for the period ending June 30, 1963, which debit was transferred to Interpace's account, resulted in the raise of the contribution rate to the maximum of 4 percent. The computation date for the year 1964 was June 30, 1963.

Subsequent to notification by the department of its increase in rate, Interpace requested that its application for the transfer of the employment experience of Concrete Pipe be cancelled. It is the contention of Interpace that the application for the transfer of the employment experience and the reserve balance must be made by both the predecessor and successor employers and that the application signed by the treasurer of

Concrete Pipe was void in that, at the time of signing on October 14, 1963, Concrete Pipe had been dissolved and there was no authority to sign on behalf of the predecessor. Further, Interpace relies upon the provisions of the Unemployment Compensation Law, as amended, sec. 301(d)(3), which reads as follows:

"A successor-in-interest who, subsequent to the first day of January, one thousand nine hundred sixty, acquires from a preceding employer the whole or a part of a reserve balance which has been adjusted to zero under the provisions of section 302[(h)](c), of this act shall be liable for contributions at the maximum rate of four per centum under the provisions of section [301(a)(3)] 301.1(f) of this act in the same manner as the preceding employer with respect to the part of the organization, trade or business transferred. This provision shall not apply if the successor-in-interest as of any computation date has been subject to this act for fourteen or more consecutive calendar quarters, or has been subject to this act for a period as long as or longer than the preceding employer": 43 PS §781.

As of June 30, 1963, Interpace, the successor-in-interest, had been an employer for considerably longer than 14 calendar quarters. Interpace is, however, faced with the difficulty that Concrete Pipe, in fact, had not requested an adjustment of its debit reserve account balance to zero. It is the position of Interpace that it should still benefit from the provisions of section 301 (d) (3) because regulation 20 of the department limited the applicants for election to reduce a reserve account balance to zero within four months from the beginning of the calendar year immediately following the computation date for determination of the contribution rate for such calendar year and that at the time the merger was to be consummated in July 1963, the regulation forbade the request for adjustment to zero, because the period set forth in the reg-

ulation had passed for 1963 and for the following year, to wit, 1964, it was impossible because the company was no longer in existence. Interpace contends that this time restriction made it impossible to have an adjustment made of the reserve account to zero and the regulation was, therefore, in direct violation of the permitted procedure provided under the law. The department, on the contrary, contends that the regulation contemplates that the applying employer will continue to be in business during the calendar year, a situation which does not exist in this case and, therefore, Concrete Pipe could have made application to adjust its debit reserve account balance to zero at any time prior to July 26, 1963, the date on which it ceased to do business.

The department argues that Concrete Pipe, as well as United Mastics Corporation, were wholly owned and controlled subsidiaries of Interpace and that the applicable provision for the calculation of contribution rates for 1964 is set forth in section 301 (d) (1) (B) of the Unemployment Compensation Law, which provides that: ". . . with respect to any transfer . . . by an employer subject to the contribution provisions of this act of its . . . business, in whole or in part, whether such transfer was by merger . . . or otherwise, the department shall transfer the experience record and reserve account balance (whether positive or negative) of such emloyer to its successor-in-interest if it finds that (I) such employer was owned or controlled by . . . the successor-in-interest either directly or indirectly, by legally enforcible means or otherwise, . . .": 43 PS §781.

This provision was added as an amendment to the law by the Act of March 24, 1964, P. L. 53. Interpace admits that this amendment would justify the department's action in increasing its contribution rate if the merger had taken place in 1964, but argues that Con-

crete Pipe had been merged with the parent company on July 26, 1963, that it ceased doing business on said date and that it had wound up its affairs by October 9, 1963.

The arguments set forth by Interpace may have been more persuasive had the factual situations been different and if the legislature had not passed certain amendments to the Unemployment Compensation Law which we believe are applicable to this case. Interpace did request the transfer of the experience record and reserve account balance of Concrete Pipe, and the department did approve the request. Whether the request application was valid or not is not now relevant in view of other existing factors. Concrete Pipe may not have been able to have its reserve balance adjusted to zero in 1964, but the fact remains that it never did take any steps prior to the merger, during the first four months of 1963, or at any other time, to take advantage of the law permitting it to adjust its reserve balance to zero if it regarded this provision of the law to be advantageous to it.

Disregarding the request for the transfer of the experience record and reserve account balance of Concrete Pipe, and faced with the existence of a merger of a parent company and two subsidiaries, either of which may have but did not adjust its reserve balance to zero, the department was required to arrive at a proper computation rate for the merged corporation, including the subsidiaries for the year 1964. The computation date for the year 1964 was June 30, 1963, and Interpace would have been entitled to a favorable rate for itself for 1964 as of that date, but the merger took place on July 26, 1963, and it was subsequently necessary to make a redetermination for the merged businesses for 1964. The provisions of section 301 (d) (1) (B) cannot be disregarded as inapplicable here. During 1964, the legislature, in a special session, enacted legislation

amending the Unemployment Compensation Law, Acts of March 24, 1964, P. L. 53, and June 22, 1964, P. L. 112. In the Act of June 22, 1964, P. L. 112, sec. 24, it provides that the "amendments to paragraphs (A) and (B) . . . of section 301(d)(1) . . . shall be applicable to the determination of contribution rates for the year 1964 and thereafter". The department, therefore, applied the computation rate for the year 1964 as it was required to do pursuant to the enacted legislation.

Accordingly, we make the following

### ORDER

And now, August 30, 1965, the appeal is dismissed and judgment is directed to be entered in favor of the Department of Labor and Industry, Commonwealth of Pennsylvania.